**James R. CHANDLER, Appellant,**

v.

**NATIONAL ASSOCIATED PETROLE-
UM COMPANY, a partnership,
Appellee.**

**No. 6494.**

United States Court of Appeals
Tenth Circuit.

Jan. 21, 1961.

Thomas D. Smart, Denver, Colo., for appellant, James R. Chandler.

Raymond J. Gengler, Denver, Colo., for appellee, National Associated Petroleum Co.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and RICE, District Judge.

RICE, District Judge.

Prior to August 30, 1957, Chandler, plaintiff in trial court, and I. J. Blackhall, Jr., General Manager of the Denver office of National Associated Petroleum Company, a partnership composed of Forrest H. Lindsay and his wife, with principal office at Tulsa, Oklahoma, hereafter referred to as "National," had some conversation while having lunch at the Petroleum Club, Denver, Colorado, in regard to a possible farm-out, which apparently had been proposed to Chandler by U. S. Smelting, Refining and Mining Company, hereafter referred to as "U. S. Smelting." Blackhall testified that the farm-out proposal was discussed at this meeting including Chandler's request for a commission. A report was forwarded to the Tulsa office outlining the proposed farm-out and the requested commission terms.

On August 30, 1957, Blackhall wrote the following letter to Chandler:

"Dear Jim: We wish to thank you for submitting farm-out pro-

posal offered by U. S. Smelting, Refining and Mining Company covering certain lands in Township 32 and 33 North, Ranges 9 and 10 West, La Plata County, Colorado.

"As you know, there are certain difficulties in firmly accepting this farm-out agreement which we are presently trying to work out. U. S. Smelting has agreed to give us time to make this agreement acceptable and if we are successful in so doing, we will enter into a firm agreement with them for the drilling of several wells.

"In the event that we are successful in entering into a firm agreement with U. S. Smelting on this proposal, we will pay you the sum of $5.00 per acre as commission for having submitted this proposal to us."

Blackhall conducted negotiations with U. S. Smelting and kept the Tulsa office advised. On October 23, 1957, an agreement was entered into between U. S. Smelting and National. This is a rather lengthy document, 11 typewritten pages, which will be referred to as "farm-out agreement," and in this agreement National firmly obligated itself to drill a well or wells for oil or gas on 320 acres in Section 20, Township 33 North, Range 9 West, and a well on 320 acres in Section 26, Township 33 North, Range 10 West in La Plata County, Colorado. Contingent upon the drilling of the two wells, the agreement provided that National should have an option for a period of two years to drill additional acreage. The option provided that National might exercise its right as to any well. The total acreage "concerned" in the agreement between National and U. S. Smelting was 2,680 acres.

Blackhall testified that during the negotiations and before the agreement was entered into he had a conversation with Chandler in which he told Chandler that negotiations were still being carried on and it appeared that an agreement would be reached. He also advised Chandler that Mr. Lindsay wanted a final report and that the only change Lindsay wanted

and insisted upon was that he would agree to pay the commission at the stated rate of $5.00 per acre but only as the acreage was earned and acquired by National. Blackhall further stated that Chandler agreed to these terms: namely that "we pay him at the rate of $5.00 per acre for acreage acquired as we acquire it." Blackhall further testified that after the agreement of October 23, 1957, on approximately October 29, 1957, Chandler called him and stated he would like a letter to the effect that National had a continuing obligation to him. Based upon this request, Blackhall wrote to Lindsay asking that he pay the commission on the first two units and set forth National's continuing obligation. The letter is as follows:

"Dear Forrest: As you know, we have agreed to pay a commission on the above deal when we had executed Agreements at the rate of $5.00 per acre for those units which we acquire.

"Since by this Agreement we are immediately acquiring rights to two drilling units totaling 640 acres, we owe a commission of $3,200.00 to J. R. Chandler. * * * I would appreciate your issuing a check in this amount and forwarding to Mr. Chandler upon execution of these Agreements.

"Since we have agreed to pay him at this same rate of $5.00 per unit in this deal which we subsequently acquire, I would appreciate your setting out this agreement and intentions in a letter directed to him in order that he will have some evidence of our continuing obligations."

Following that and on November 12, 1957, National wrote a letter to Chandler enclosing a check for $3,200, representing brokerage on the acreage upon which National had drilled the two wells. The letter contained the following statement: "As you know, Smelting has optioned to us by agreement other acreage which it controls in this same area. It is contemplated in our agreement with Smelting that from time to time we may

wish to establish and drill additional 320-acre units. We understand that as such units may be formed, you will be entitled to a brokerage fee of $5.00 per acre for so much of Smelting's acreage as we may utilize in establishing such units."

Chandler accepted the $3,200 check, cashed it, and retained the funds, the date of the check being November 12, 1957; thereafter, on June 17, 1958, Chandler filed suit seeking to recover $10,200, representing $5 per acre commission on 2,040 acres, all acreage mentioned in the farm-out except the 640 acres on which wells were drilled.

The record reflects that after this suit was filed National drilled another well on a 320-acre unit and sent a check to Chandler for $1,600. This check was retained but not cashed. The trial court, at the conclusion of the trial, proposed to enter a judgment in favor of Chandler for the additional $1,600, but in view of the fact that the check was tendered to plaintiff in open court, the judgment did not include the $1,600.

Chandler's contention, as stated by his counsel in the brief filed herein, is that the letter of August 30, 1957, ripened into a complete, clear, and unambiguous contract when the farm-out agreement was entered into between National and U. S. Smelting. The contention of Chandler is well stated in his brief as follows: "From the commencement of this action to the present date, Chandler has taken, and continues to take, the position that Exhibit P–1 (letter of August 30, 1957) embodies the entire agreement of the parties and that it is plain and unambiguous on its face. The only other element required to prove Chandler's claim was Exhibit P–2, the firm agreement between National and U. S. Smelting."

We cannot agree that the letter of August 30, 1957, ripened into a clear and unambiguous contract when the farm-out agreement was entered into.

Before the farm-out agreement was entered into, National had required a clarification of the letter of August 10, 1957, and Chandler had agreed to a commission based on acreage acquired as acquired. By the terms of the farm-out, National made a firm agreement to drill two wells on each of two 320-acre tracts described in the agreement. Additional drilling was contingent upon compliance with the terms for the drilling of two wells; and in the event the two wells were drilled, further drilling was optional with National. National exercised its option to acquire and drill an additional 640 acres, after which the farm-out agreement was terminated.

Finally, we concur with the conclusion of the trial court that when Chandler accepted the $3,200 check and retained the proceeds, he thereby agreed to the payment of $5 per acre actually acquired by defendant and was estopped thereafter to contend for a different interpretation.

The judgment is affirmed.